**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kenneth FREDERICKS, Defendant and Appellant.**

**Cr. No. 920338.**

Supreme Court of North Dakota.

Oct. 26, 1993.

Thomas A. Dickson of Nodland & Dickson, Bismarck, for defendant and appellant.

Joseph H. Kubik, State's Atty., Dickinson, for plaintiff and appellee.

LEVINE, Justice.

On appeal, Kenneth Fredericks asks us to reverse his conviction for actual physical control of a motor vehicle while under the influence of alcohol, NDCC § 39-08-01, because, he claims, the jury panel from which his jury was selected was not a fair cross section of the community and thus violated NDCC §§ 27-09.1-01 and 27-09.1-03, *infra*, the United States Constitution, and the North Dakota Constitution. We find that Fredericks' claim of violation of NDCC §§ 27-09.1-01 and 27-09.1-03 is procedurally deficient, and that Fredericks has failed to make a prima facie case under either the federal

constitution or state constitution. Accordingly, we affirm.

 Fredericks, a Native American, was tried in Dunn County. A few days before trial, the trial court distributed to the parties a list of the names of the twenty-nine people on the jury panel. Before voir dire on the day of trial, Fredericks filed a handwritten motion, purportedly under NDCC § 29–17–20,[1] challenging the jury panel and alleging that the "panel's composition [did] not accurately or fairly reflect the ethnic diversity of Dunn County," therefore depriving Fredericks of his right "to be tried by a jury of his peers." Arguing to the trial court, Fredericks asserted that none of the jury panel was Native American and that Native Americans accounted for approximately nine percent of Dunn County's population. Fredericks further asserted that "the [master] list they draw these names from is not properly representative of the Native American popula-

tion" and that "the process is maybe flawed and not the people working in the process." In support of the motion, Fredericks cited the United States Constitution, the North Dakota Constitution, and NDCC § 27–09.1–01. He asked the court to stay the proceedings "until an adequate jury list is prepared."[2] The trial court denied the motion. On appeal, Fredericks offers additional evidence;[3] however, we must limit our review to the evidence contained in the record. *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D.1985).

## I. STATUTORY CLAIM

Chapter 27–09.1, the Uniform Jury Selection and Service Act, establishes the procedure for the state to create a jury selection plan and the clerk of each county to compile a master list.[4] The master lists use voters from the last general election as their primary source. NDCC § 27–09.1–05(1). This court periodically designates supplementary

---

1. Section 29–17–20 establishes the procedure for challenging a jury panel under NDCC ch. 29–17. Challenges to jury panels under chapter 29–17 may be founded "only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn." NDCC § 29–17–19.

2. Apparently, Fredericks uses "jury list" and "jury panel" interchangeably. North Dakota law defines "jury panel" as "a list of jurors returned by a sheriff to serve at a particular court or for the trial of a particular action." NDCC § 29–17–17. The trial jury, which is the jury that tries a particular case, is chosen from the jury panel. Black's Law Dictionary 856, 857 (6th ed. 1990); *see* NDCC §§ 29–17–04, 29–17–09. A jury list may contain the names of those on the trial jury or the jury panel. Black's Law Dictionary 857 (6th ed. 1990). Fredericks' motion was before voir dire and his challenge was therefore to the makeup of the jury panel, not the trial jury. Therefore, we assume that by "jury list," Fredericks means the list of names on the jury panel.

3. Fredericks states in his brief that in the five jury trials in Dunn County over the past two years, no enrolled members of the Three Affiliated Tribes have appeared on the jury lists. Master lists in North Dakota currently are (and at the time of Fredericks' trial were) composed of licensed drivers and voters in the last general election. North Dakota Jury Selection Plan (1990, 1992). Fredericks explains this alleged underrepresentation by asserting that Native

Americans vote and drive in lesser proportions than non-Native Americans. While we will not speculate on the sufficiency of these assertions for a claim under either the federal constitution, state constitution, or NDCC ch. 27–09.1, we nevertheless are concerned that juries in North Dakota reflect the diversity of our population. We note that the federal courts have held that lists of actual voters and voter registration lists adequately present a fair cross section despite any actual underrepresentation of a distinct group. *See, e.g., United States v. Cecil*, 836 F.2d 1431 (4th Cir.), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988). However, we are conscious of our responsibility under NDCC § 27–09.1–05 to designate supplementary sources for the master lists in keeping with our state policy that jurors "be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity ... to be considered for jury service." NDCC § 27–09.1–01. Accordingly, under NDCC § 27–09.1–18 and NDAdminR 9, we refer the questions raised by this case to the Jury Standards Committee. We direct the Committee to examine the current composition of the master lists and any significant disparities between the lists and the distinct racial, ethnic, and gender groups within the populations of the areas served.

4. Chapter 27–09.1 also contains several other provisions, such as the necessary requirements for jury duty, NDCC §§ 27–09.1–07 and 27–09.1–08; compensation for jurors, NDCC § 27–09.1–14; protection of jurors' and witnesses' employment, NDCC § 27–09.1–17; etc.

sources for the master lists. *Id.* Currently, county clerks compile the master lists from voters in the last general election and licensed drivers. North Dakota Jury Selection Plan (1992). Jury panels, from which juries for particular cases are chosen, are randomly selected from the master lists. *Id.*

■ Fredericks asserts that Dunn County's jury selection process violates NDCC §§ 27–09.1–01 and 27–09.1–03(3). Section 27–09.1–01 highlights the legislature's intent in adopting the Uniform Jury Selection and Service Act:

> "[I]t is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state...." NDCC § 27–09.1–01.

Section 27–09.1–03(3) defines "master list" as "the list of actual voters for the county which shall be supplemented with names from other sources prescribed pursuant to this chapter in order to foster the policy and protect the rights secured by this chapter." Apparently, Fredericks argues that the master list from which his jury panel was drawn violated these statutes because it did not represent a fair cross section of Dunn County, nor was it supplemented adequately to meet that end. However, Fredericks' motion did not comply with section 27–09.1–12, which sets out the exclusive procedure for challenging compliance with jury selection procedures under chapter 27–09.1:

> "1. Within seven days after the moving party discovered or by the exercise of diligence could have discovered the grounds therefor, and in any event before the petit jury is sworn to try the case, a party may move to stay the proceedings, and in a criminal case to quash the indictment or information, or for other appropriate relief, on the ground of a substantial failure to comply with this chapter in selecting the grand or petit jury.
>
> "2. Upon motion filed under subsection 1 containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with this chapter, the

moving party is entitled to present in support of the motion the testimony of the clerk, any relevant records and papers not public or otherwise available used by the clerk, and any other relevant evidence. If the court determines that in selecting either a grand jury or a petit jury there has been a substantial failure to comply with this chapter, the court shall stay the proceedings pending the selection of the jury in conformity with this chapter, quash an indictment or information, or grant other appropriate relief.

> "3. The procedures prescribed by this section are the exclusive means by which a person accused of a crime, the state, or a party in a civil case may challenge a jury on the ground that the jury was not selected in conformity with this chapter."

Fredericks' motion did not contain a sworn statement of facts showing noncompliance with chapter 27–09.1. Because Fredericks challenges the statutory procedure under which Dunn County compiles its master list, which is governed by chapter 27–09.1, his motion must comply with section 27–09.1–12. He may not evade the requirements of section 27–09.1–12 by resort to another chapter, because section 27–09.1–12 is the exclusive means by which one may challenge compliance with chapter 27–09.1. Having failed to follow the statute, Fredericks may not obtain reversal of his conviction for any alleged violation of chapter 27–09.1. *See People v. Green,* 759 P.2d 814 (Colo.Ct.App.1988) [refusing to reverse defendant's conviction on ground that defendant's motion did not comply with requirements of Uniform Jury Selection and Service Act].

## II. CONSTITUTIONAL CLAIMS

■ A criminal defendant's right to an impartial jury trial under the Sixth Amendment requires the selection of the jury from a representative cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The Fourteenth Amendment makes the provisions of the Sixth Amendment binding upon the states. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Although the North Dakota Constitution's

guarantee of the right to a jury trial does not explicitly require an impartial jury, *see* N.D.Const. art. I, § 13, we would read the Sixth Amendment's impartiality and fair-cross-section requirements into our state constitution. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court set out the elements of a prima facie violation of the Sixth Amendment's fair-cross-section requirement:

"[T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364, 99 S.Ct. at 668.

Once the defendant has made a prima facie showing, the burden shifts to the state to show a significant interest manifestly and primarily advanced by the aspects of the jury selection process that result in the disproportionate exclusion of a distinct group. *Id.* at 367–68, 99 S.Ct. at 670–71.

 Fredericks did not present any evidence to the trial court to satisfy either the second or third prong of the *Duren* test. Fredericks offered only the unsubstantiated assertions that Dunn County's population was nine percent Native American and that none of the jury panel was Native American.[5] These bare assertions, standing alone, are insufficient to show an underrepresentation of a distinct group. Even were we to read the State's Attorney's conflicting statements in the record as admissions that Native Americans were underrepresented on this particular jury panel, Fredericks fails to satisfy *Duren's* third prong. A mere observation that there are no Native Americans on a jury panel that was drawn from a population containing Native Americans "simply is not sufficient to demonstrate any systematic exclusion." *United States v. Guy*, 924 F.2d

702, 706 (7th Cir.1991). Fredericks' constitutional claims must fail for lack of showing either that Native Americans were underrepresented on his jury panel or that Native Americans were systematically excluded in the jury selection process.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

to show an underrepresentation of a distinct group. *United States v. Gelb*, 881 F.2d 1155, 1161 (2nd Cir.), *cert. denied*, 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989).

---

**5.** Fredericks apparently bases this latter assertion solely on the surnames of the jury panel. We believe that "[s]tereotypical ethnic or religious characterizations of surnames are unreliable and only tenuous indicia" and are insufficient