**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Jaime Federico ROBLES, Defendant and Appellant.**

**Crim. No. 940331.**

Supreme Court of North Dakota.

July 27, 1995.

Stephen J. Rice (argued), State's Atty., Grafton, for plaintiff and appellee.

Todd Daniel Burianek (argued), Grafton, and Robert J. Woods (appearance), of Woods Legal Services, Forest River, for defendant and appellant.

LEVINE, Justice.

On appeal, Jaime Robles asks us to reverse his conviction for aggravated assault, because the panel from which his jury was selected was not a fair cross-section of the community and thus violated his statutory rights under N.D.C.C. Ch. 27–09.1 and his right to an impartial jury under the Sixth Amendment to the United States Constitution. We conclude Robles has failed to show that the procedure used to select the jury venire violated N.D.C.C. Ch. 27–09.1, or that

he was denied his constitutional right to an impartial jury. Accordingly, we affirm.

On April 24, 1994, Robles caused substantial bodily injury to Lee Alanis, who was shot by Robles while Robles was attempting to inflict serious bodily injury on another person, Victor Tayen. Robles was charged with aggravated assault, in violation of N.D.C.C. § 12.1–17–02(3). Before trial, Robles moved to dismiss the criminal information, alleging Hispanics are systematically excluded from jury service in Walsh County and, therefore, a trial in Walsh County would deny Robles his statutory and constitutional rights to a fair and impartial jury. The motion was denied, and Robles was then tried by jury, convicted of aggravated assault, and sentenced to four years in the state penitentiary.

## I. Statutory Claim

■ Robles argues the State violated the Uniform Jury Selection and Service Act, N.D.C.C. Ch. 27–09.1, because it did not adequately supplement the master list from which jury are selected with additional sources of names, such as utilities bills, job service records, or migrant school records.

N.D.C.C. Ch. 27–09.1 establishes the procedure for jury selection. N.D.C.C. § 27–09.1–05(1) sets the specific procedure for the clerk of each county to compile and maintain a master jury list:

"The clerk for each county shall compile and maintain a master list consisting of all lists of actual voters for the county supplemented with names from other lists of persons resident therein, such as lists of utility customers, property taxpayers, motor vehicle registrations, and driver's licenses, which the supreme court of this state from time to time designates. In compiling the master list the clerk shall avoid duplication of names."

This court periodically designates supplementary sources for the master lists. Under the plan in effect for Robles' trial, the county clerk was required to compile the master list "from the voters in the most recent general election and a list of licensed drivers." North Dakota Jury Selection Plan (1992).

■ The record shows the jury venire was selected from a master list of names obtained by combining the list of voters in the last general election with a list of licensed drivers. The master list was compiled in compliance with the statute and the jury selection plan designated by this court. The county clerk was not required to supplement the master list with other sources, absent a directive from this court or other compelling justification. Indeed, random selection of jurors from voter lists, without supplementation from other sources, has been upheld under our statute and similar acts. *See e.g.,* *United States v. Clifford,* 640 F.2d 150, 156 (8th Cir.1981); *United States v. Freeman,* 514 F.2d 171, 173 (8th Cir.1975). The jury selection procedure under our statute, which prohibits exclusion from jury service on the basis of race, is neutral on its face. *State v. Manhattan,* 453 N.W.2d 758, 759 (N.D.1990). Robles offered no evidence to show the supplemental sources suggested by him would produce a fairer cross-section of the population on the master list than is derived from the present system.[1] We conclude Robles has not demonstrated the county's procedure in compiling its master list for selecting jury venires violated N.D.C.C. Ch. 27–09.1.

## II. Constitutional Claim

■ Under the Sixth Amendment, a criminal defendant has a right to a jury trial with an impartial jury selected from a representative cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The requirements under the Sixth Amendment are made binding upon the states through the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (La), *rehearing denied,* 392 U.S. 947, 88 S.Ct.

1. The goal of this court, as any institution in a democratic society, is to attempt to provide the means to make our system as inclusive of minorities as reasonably possible, especially as our state, like our country, becomes more ethnically, religiously, and culturally diverse. To that end, we have instructed the Jury Standards Committee to examine the current composition of the master lists and any significant disparities between the lists and the distinct racial, ethnic, and gender groups within the populations of the areas served. *State v. Fredericks,* 507 N.W.2d 61, 63 n. 3 (N.D.1993). To date, the Committee has not made any recommendations.

2270, 20 L.Ed.2d 1412 (1968). In *State v. Fredericks*, 507 N.W.2d 61, 65 (N.D.1993), this court, quoting from *Duren v. Missouri* 439 U.S. 357, 364, 367–368, 99 S.Ct. 664, 668, 670–71, 58 L.Ed.2d 579 (1979), set forth the elements for proving a violation of the Sixth Amendment's right to a jury venire selected from a fair cross-section of the community:

> " '[T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' *Id.* at 364, 99 S.Ct. at 668.

"Once the defendant has made a prima facie showing, the burden shifts to the state to show a significant interest manifestly and primarily advanced by the aspects of the jury selection process that result in the disproportionate exclusion of a distinct group. *Id.* at 367–68, 99 S.Ct. at 670–71."

■ The first element of a fair-cross-section challenge is to show the group alleged to be excluded is a distinctive group in the community. A group of people is distinct when the members of the group have a shared attribute that defines or limits their membership and when they share a community of interests. *United States v. Black Bear*, 878 F.2d 213 (8th Cir.1989). It is clear that Hispanics are a distinctive group for purposes of Sixth Amendment fair-cross-section claims. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *United States v. Garcia*, 991 F.2d 489 (8th Cir.1993). By alleging exclusion of Hispanics from jury venires, Robles has met the first element of defining a distinctive group.

■ The second element requires Robles to demonstrate that representation of the distinctive group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. Robles' evidence on this element is lacking.

Robles introduced data from the 1990 census showing a total adult population in Walsh County of 10,023 of which 213, or 2.1 percent, are Hispanic. Even if all of that number were United States citizens and North Dakota residents who would qualify as potential jurors, there is no data from which to conclude that they have been underrepresented in Walsh County jury venires.

The clerk of court for Walsh County testified that there have been some Hispanics in the jury venires summoned by her and, based upon her recognition of Hispanic surnames, she hesitatingly gave her opinion that since 1989 there have been "under five" Hispanics in the jury venires. Attorney Mike Keller testified that in conducting between 20 and 25 jury cases as a prosecutor in Walsh County he could not recall any Hispanic person sitting as a juror in any of those cases.[2] However, after reviewing jury lists of eleven trials, Keller testified one Hispanic juror sat on one of those trials, belying the alleged fact there have been no Hispanics in the jury venires.

■ Robles also introduced Walsh County jury reports from 1989 through 1994. Those reports list, by case, the venire members involved and the amount of payment to them. However, Robles made no attempt to identify Hispanic persons on the jury venires or the percentage makeup of the venires based upon race. There is no evidence to support Robles' assumption that all Hispanics have group identifying surnames, and evidence in other cases has indicated otherwise. *See United States v. Brummitt*, 503 F.Supp. 859 (Tex.1980). The use of surnames in a list to identify ethnic origin is fraught with difficulties and inaccuracies. *See I.M.A.G.E. v. Bailar*, 518 F.Supp. 800, 806–807 (N.D.Cal.1981).

---

2. A jury is a body of persons temporarily selected to try a question of fact. Black's Law Dictionary p. 855 (6th Ed.1990). It is chosen from the jury panel or venire which is the group of prospective jurors who are summoned to appear and from whom the jury is selected. *State v. Fredericks*,

507 N.W.2d 61, 63 n. 2 (N.D.1993). Keller's testimony that he could not remember Hispanic persons sitting as jurors in particular cases does not establish there were no Hispanic persons summoned to the jury panels or venires.

We decline Robles' invitation to review, on our own initiative, surnames of the jury venire lists to determine the percentage of Hispanics represented on them, without statistical evidence or expert analysis in the record to assist that endeavor. To succeed on a claim of rights violations based upon ethnic origin, a claimant must provide some statistical evidence and analysis, in addition to a mere list of surnames, to demonstrate the merits of the claim. *See United States v. Esparsen,* 930 F.2d 1461, 1466–1467 (10th Cir.1991); *United States v. Bucci,* 839 F.2d 825, 834 (1st Cir.1988).

Assuming from Robles' census data there are 213 Hispanic adults in Walsh County, the testimony does not show that Hispanics have been underrepresented on jury venires. Robles did not provide statistical data or analysis to demonstrate his allegation of underrepresentation of Hispanics. Persons providing considerably more expert analysis and statistical evidence have failed to meet their burden of proving unfair jury representation. *See e.g., United States v. Sanchez–Lopez,* 879 F.2d 541 (9th Cir.1989); *State v. Williams,* 525 N.W.2d 538 (Minn.1994); *State v. Huffaker,* 493 N.W.2d 832 (Iowa 1992). We conclude Robles has failed to demonstrate the representation of Hispanics in Walsh County jury venires is not fair and reasonable in relation to the number of Hispanics in the community.

■ Even if Robles had shown that Hispanics were underrepresented in Walsh County venires, he has failed to prove that Hispanics are systematically excluded in the Walsh County jury selection process. The clerk of court testified about the specific procedure used to obtain the venire from which juries are selected in Walsh County:

"A. First of all, I receive a list from the state which is made up of a list from the poll books, every 8th name in the poll book, is sent to Bismarck. The names are in turn mixed with eligible drivers license[s] from Walsh County. Bismarck in turn sends me a list and I go in order and I mail out about a hundred letters in order and from that list when I get them back, I qualify them, disqualify them or excuse

them. And then, we summons the jury in from a qualified list.

\* \* \* \* \* \*

"Q. Are you able to use any other procedure, other methods to bring in jurors or are you bound by the orders that you get from the court administrator's office?

"A. I'm bound by the orders from the court administrator's office? I follow their rules."

■ To prove systematic exclusion, Robles must show the exclusion is inherent in the particular jury selection process utilized. *United States v. Garcia,* 991 F.2d 489 (8th Cir.1993). According to the clerk's testimony, potential jurors are randomly selected from mixed lists of voters and persons with driver's licenses. There is no subjective determination or screening to exclude potential jurors. Robles has made no showing that the process of jury selection used by Walsh County contains an inherent flaw tending to exclude persons of Hispanic origin. Robles has offered no explanation how the process results in systematic exclusion of Hispanics from the county's jury venires. *Compare United States v. Jackman,* 46 F.3d 1240 (2d Cir.1995) (person claiming fair-cross-section violation met burden of showing systematic exclusion of Blacks and Hispanics from jury venires because the source lists excluded two cities within the district having the highest Black and Hispanic populations). A mere observation that there are no persons of the allegedly excluded class on a jury venire that was drawn from a population containing members of that class is not sufficient to demonstrate a systematic exclusion. *United States v. Guy,* 924 F.2d 702 (7th Cir.1991). *See also State v. Marshall,* 531 N.W.2d 284, 287 (N.D.1995) (" 'unsubstantiated assertions' are insufficient to show underrepresentation or systematic exclusion of a minority group from jury selection").

We hold Robles' constitutional claim that he was denied his Sixth Amendment right to a fair and impartial jury derived from a representative cross-section of the community fails, because he did not meet his burden of showing either disproportionate representation of Hispanics on jury venires or sys-

tematic exclusion of Hispanics in the jury selection process.

The judgment of conviction is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.