2000 ND 105

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Steven Arlen TORGERSON, Defendant and Appellant.**

**No. 990340.**

Supreme Court of North Dakota.

May 25, 2000.

Thomas K. Schoppert of Schoppert Law Firm, Minot, N.D., for defendant and appellant.

Bruce A. Romanick, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee; argued by Erin Sandine, third-year law student.

NEUMANN, Justice.

[¶ 1] Torgerson appeals from a judgment finding him guilty of driving under the influence of intoxicating liquor. Torgerson argues he is entitled to a new trial because the Burleigh County jury panel selection process is not random. We affirm.

[¶ 2] On May 9, 1999, Steven Torgerson was charged in Burleigh County with driving under the influence of intoxicating liquor. A jury trial was held on November 1, 1999. Before trial, Torgerson orally moved to disqualify the jury panel alleging the selection process was not random. The trial court summoned the Clerk of the District Court to explain the jury panel selection process. Burleigh County jury panels are selected from a jury list composed of voters and licensed drivers. The clerk randomly divides the jury list and notifies the selected persons by mail. The notice instructs the selected persons to call the clerk's office between 1:00 p.m. and 3:00 p.m., on the day before trial. The first persons to call in form the jury panel. After the court dismissed Torgerson's motion, he again objected to the jury panel selection process and moved for a mistrial. The court denied the motion. Torgerson moved to certify the question to this Court. The court denied the motion. The jury found Torgerson guilty. Torgerson appeals.

[¶ 3] Torgerson argues the trial court improperly denied his motion to disqualify the jury panel, his motion for a mistrial, and his motion to certify a question. Those appealed motions essentially present a singular issue: Whether the Burleigh County jury panel selection process is "random." That determination is a conclusion of law, or mixed question of law and fact, not a finding of fact. We fully review conclusions of law and mixed questions of law and fact under the de novo standard. *State v. Lefthand*, 523 N.W.2d 63, 67 (N.D.1994); *State v. Owens*, 1997 ND 212, ¶ 13, 570 N.W.2d 217.

[¶ 4] Generally, a jury panel challenge is governed by N.D.C.C. ch. 27–09.1. Section 27–09.1–12, N.D.C.C., provides:

1. Within seven days after the moving party discovered or by the exercise of diligence could have discovered the grounds therefor, and in any event before the petit jury is sworn to try the case, a party may move to stay the proceedings, and in a criminal case to quash the indictment or information, or for other appropriate relief, on the ground of a substantial failure to comply with this chapter in selecting the grand or petit jury.

2. Upon motion filed under subsection 1 containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with this chapter, the moving party is entitled to present in support of the motion the testimony of the clerk, any relevant records and papers not public or otherwise available used by the clerk, and any other relevant evidence. If the court determines that in selecting either a grand jury or a petit jury there has been a substantial failure to comply with this chapter, the court shall stay the proceedings pending the selection of the jury in conformity with this chapter, quash an indictment or information, or grant other appropriate relief.

3. The procedures prescribed by this section are the exclusive means by which a person accused of a crime, the state, or a party in a civil case may challenge a jury on the ground that the jury was not selected in conformity with [N.D.C.C., chapter 27–09.1, the Uniform Jury Selection and Service Act].

[¶ 5] The State argues Torgerson cannot object to the jury panel selection process because he failed to comply with N.D.C.C. § 27–09.1–12 by not filing the required motion. We disagree.

[¶ 6] Torgerson concedes he failed to comply with N.D.C.C. § 27–09.1–12. But, he asserts the State cannot demand a strict application of the statute because neither party raised the statute to the trial court. This Court does not consider arguments raised for the first time on appeal. *State v. Goulet*, 1999 ND 80, ¶ 11, 593 N.W.2d 345. Further, the trial

court essentially followed the statutory procedure by allowing evidence explaining the jury panel selection process, including the clerk's testimony. The State's failure to raise the issue and the court's allowance of the relevant evidence precludes strict application of N.D.C.C. § 27–09.1–12. *Cf. State v. Fredericks,* 507 N.W.2d 61, 64 (N.D.1993) (denying motion because defendant failed to follow N.D.C.C. § 27–09.1–12); *People v. Faulk,* 251 A.D.2d 345, 673 N.Y.S.2d 715 (1998) (failing to comply with the statutory requirements waived objection to jury panel composition). Thus, although the issue was irregularly raised, we will not dismiss Torgerson's appeal for failure to file the motion.

▮ [¶ 7] Torgerson argues he is entitled to a new trial because the Burleigh County jury panel selection process is not a "[r]andom selection procedure ... that provides each eligible and available person with an equal probability of selection." *See North Dakota Jury Selection Plan,* Standard 3, Standards Relating to Juror Selection Use and Management. We disagree.

[¶ 8] Rule 9(2) and (3), N.D.Admin.R, provide, "the [North Dakota Jury Selection Plan] shall detail the procedures to be followed in selecting and managing jurors in order to implement the policies set forth in N.D.C.C. ch. 27–09.1" and "[a]ll courts conducting jury trials shall obtain jury panels in the manner prescribed by the [North Dakota Jury Selection Plan]." Section 27–09.1–01 provides jurors must "be selected at random from a fair cross section of the population of the area served by the court."

[¶ 9] Jurisdictions have defined "random" or "randomness" differently. Random selection under the federal Jury Selection and Service Act is not defined as statistical randomness, but rather a system affording no room for impermissible discrimination against individuals or groups. *United States v. Gregory,* 730 F.2d 692, 699 (11th Cir.1984) (citing S.Rep. No. 891, 90th Cong., 1st Sess. 16, n. 9

(1967), U.S.Code Cong. & Admin.News 1968, p. 1792); *see also Celotex Corp. v. Wilson,* 607 A.2d 1223, 1228, n. 17 (Del. 1992) (applying the *United States v. Gregory* analysis to the Delaware Jury Act). *But see United States v. Rioux,* 97 F.3d 648 (2nd Cir.1996) (applying three statistical models to an underrepresentation analysis). "Randomness means that, at no time in the jury selection process will anyone involved in the action be able to know in advance, or manipulate, the list of names who will eventually compose the empaneled jury." *Williams v. Commonwealth,* 734 S.W.2d 810, 812–13 (Ky.Ct. App.1987).

[A] party asserting a lack of randomness, in the absence of a substantial deviation from the statutory plan, must demonstrate a resulting exclusion of a constitutionally cognizable group. Courts which have addressed the question of resulting prejudice overwhelmingly have concluded that such a showing is necessary. When the original jury pool is valid, the selection process from that pool will be considered "random" in the "absence of any arbitrary attempt to exclude a class of persons from the jury." *McClendon v. United States,* 8th Cir., 587 F.2d 384, 387 (1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1979) (footnote omitted); *United States v. Davis,* 10th Cir., 518 F.2d 81, *cert. denied,* 423 U.S. 997, 96 S.Ct. 425, 46 L.Ed.2d 371 (1975); *United States v. Butts,* M.D.Fla., 514 F.Supp. 1225, 1236 (1981) ("absent a showing that some cognizable group was excluded from the jury selection process, no substantial violation will lie."); *United States v. Haley,* N.D.Ga., 521 F.Supp. 290, 295 (1981) (principles of randomness violated by impermissible discrimination against individuals or groups); *United States v. Gregory,* 11th Cir., 730 F.2d 692, 699 (1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170–71, 84 L.Ed.2d 321 (1985) (discriminatory selection of jurors required to violate Federal Act).

However, some federal cases have held that a party need not show actual prejudice to establish a "substantial failure" to comply. *United States v. Nelson*, 9th Cir., 718 F.2d 315, 318 (1983); *United States v. Okiyama*, 9th Cir., 521 F.2d 601, 604 (1975). In *United States v. Kennedy*, 5th Cir., 548 F.2d 608, *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977), the court ruled that a statutory violation which directly affects the random nature of the jury selection is sufficient without demonstrating that the violation excluded some cognizable group. The court rejected the challenge on appeal, however, because the defendant had failed to perfect his objection to the jury at the trial level with the appropriate sworn statement required by the Federal Act. Significantly, the court also rejected the defendant's claim that the use of volunteer jurors violated his due process rights. The court noted that such a claim requires a showing the selection process "tended to exclude or underrepresent some discernable class of persons...." 548 F.2d at 614.

*Gattis v. State*, 637 A.2d 808, 815–16 (Del. 1994).

[¶ 10] Torgerson asserts the Burleigh County process is not random because potential jury panel members may not have a telephone, or telephone access from 1:00 p.m to 3:00 p.m. We disagree.

[¶ 11] No case law directly examines the randomness of already summoned jurors calling in by telephone to form jury panels, but courts have concluded juror summoning by telephone is random. Summoning jurors by telephone does not discriminate "against those of the lower economic class, i.e., those who don't own a phone." *State v. Chatman*, 109 Ariz. 275, 508 P.2d 739, 742 (Ariz.1973). A jury panel drawn from a list of registered voters and summoned by telephone calls, being placed between 2:00 p.m. and 4:00 p.m., was not improper without a showing of prejudice. *State v. Mojarro Padilla*, 107 Ariz. 134, 483 P.2d 549, 552 (Ariz.1971), *overruled on other grounds*. Regardless of whether persons without telephones or persons who are away from home during the day are a distinctive group for purposes of establishing prima facie case of discrimination in selection of jury venire panel, such a showing would be irrelevant in light of the defendant's failure to demonstrate systematic exclusion. *Singleton v. A.L. Lockhart*, 871 F.2d 1395, 1399 (8th Cir.1989).

Appellant nevertheless maintains that the summoning methods used here defeat the otherwise random selection process. The significance of this possibility lies in the fact that a non-random process of actual selection of jurors might result in the systematic exclusion of distinct and constitutionally identifiable segments of the population even though there were no such exclusions from the initial pool or venire. Although appellant here asserts that such a distinctive and identifiable segment of the population was excluded, that is, blacks and working people, appellant offers no factual basis underlying his claim. *Rojas v. State*, 288 So.2d 234 (Fla.1973), *cert. den.*, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974). In other words, appellant offered no evidence below showing a link between ownership of a telephone at one's residence and membership in the classes appellant asserts were excluded.

Furthermore, even if we assume that appellant has sufficiently identified a distinctive and identifiable segment of the community excluded from his trial by the selection process, that is, persons without telephones at their personal residences, and persons with telephones who were working, appellant's claim is still unavailing. Not every factually distinguishable group has been given constitutionally 'identifiable' status in terms of achieving a representative cross-section of the community in the jury venire, and selection procedures effecting such non-recognized groups have been upheld

even where the procedure utilized in fact excludes these groups. *U.S. v. Ross,* 468 F.2d 1213 (9th Cir.1972); *U.S. ex rel Chestnut v. Criminal Court,* 442 F.2d 611 (2d Cir.1971). Here, the asserted 'identifiable' group—persons who either do not possess residential telephones, or if they do, are working people—has not been designated a constitutionally protected segment of the community. *Cf. Hitchcock v. State,* 413 So.2d 741, 745 (Fla.1982), *cert. den.,* 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982) (mothers with young children do not comprise a constitutionally significant class).

*Carwise v. State,* 454 So.2d 707, 709–10 (1984) (footnote omitted).

[¶ 12] However, the Montana Supreme Court recently held telephone summoning frustrates the random nature of a jury selection process. *State v. LaMere,* 2000 MT 45, —— Mont. ——, 2 P.3d 204, 220–21 (2000). In *LaMere,* the defendant established a factual basis showing prejudice and systematic exclusion.

LaMere presented statistics establishing significant disparity in telephone service to residents above and below the poverty line; the evidence also established that the disparity was significantly enhanced when the representative numbers of Anglo Americans and Native Americans in the community were factored in. Moreover, LaMere introduced a statistician's affidavit opining, inter alia, that the telephonic summoning procedure used in Cascade County resulted in below-poverty households being seven times more likely to be excluded from jury participation.

*Id.* at ——, 2 P.3d at 223 (Gray, J., specially concurring).

[¶ 13] Here, Torgerson has not provided any factual basis showing the Burleigh County jury panel selection process is prejudicial, actually excludes, systematically excludes, or statistically excludes potential jury panel members without a tele-

phone, or telephone access from 1:00 p.m. to 3:00 p.m. The limited record in this case simply does not develop the facts sufficiently to establish "a substantial failure to comply with [Chapter 27–09.1]." *See* N.D.C.C. § 27–09.1–12(2).

[¶ 14] Torgerson also asserts the Burleigh County process is not random because jury panels are formed from the first potential jurors to call in. We disagree.

[¶ 15] The Burleigh County process is numerical and no systematic exclusion of a protected group exists. *See Boston v. Bowersox,* 202 F.3d 1001 (8th Cir.1999). *Boston* provides:

[t]he jury selection process was a random one because, as Bowersox states in his brief, 'the jury's supervisor's decision to send the first forty-five members of the "qualified jury list" to arrive at the courthouse to the trial judge's courtroom for jury selection in Boston's case ... was not race-based or gender-based; instead, it was numerical ... and there was certainly no systematic exclusion.' *See Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) (to establish violation of fair cross-section requirement, petitioner must show distinctive group in community was systematically excluded in jury selection process).

*Id.* at 1002.

[¶ 16] Again, Torgerson's failure to provide any factual basis showing prejudice or systematic exclusion does not develop the record sufficiently to establish "a substantial failure to comply with [Chapter 27–09.1]." *See* N.D.C.C. § 27–09.1–12(2).

[¶ 17] The judgment is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.