2003 ND 119

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Anna Marie SCHWAB, Defendant and Appellant.**

No. 20020306.

Supreme Court of North Dakota.

July 16, 2003.

John J. Mahoney, State's Attorney, Center, for plaintiff and appellee.

Ronald A. Reichert, Reichert & Herauf, P.C., Dickinson, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   Anna Marie Schwab appealed a judgment entered on a verdict finding her guilty of driving while under the influence of alcohol "and/or" with a blood alcohol concentration of at least .10 percent by weight.   We conclude there were no reversible errors in amending the complaint and denying a continuance, or in the jury selection process.   We affirm.

I

[¶ 2]   At approximately 10:30 p.m., on May 18, 2002, Schwab was involved in a motor vehicle accident in Oliver County. The vehicle Schwab was operating collided with farm equipment being pulled by a tractor operated by Darrell Schulte, who was turning onto a highway while pulling an air seeder, grain cart and anhydrous ammonia tank.   Schulte was cited for fail-

ure to yield the right of way. Schwab was issued a uniform complaint and summons citing N.D.C.C. § 39–08–01 and charging her with driving under the influence of alcohol or drugs. An analysis of blood drawn from Schwab by a nurse at a Bismarck hospital at 12:20 a.m., on May 19, 2002, revealed a blood alcohol concentration of .15 percent by weight.

[¶ 3] After a trial on October 10, 2002, the jury returned a verdict finding Schwab guilty:

> We ... find the defendant, Anna Marie Schwab, GUILTY of the offense of:
>
> X  driving while under the influence of an alcoholic beverage
>
> and/or
>
> X  driving at a time when she had a blood alcohol concentration of at least .10 by weight as measured by a chemical test performed within two hours after driving.

[¶ 4] The trial court entered judgment of guilty and sentenced Schwab to 15 days in jail, suspended for 18 months, a fine of $350, with $100 suspended, a victim witness program fee of $25, and completion of a chemical dependency evaluation by a certified addiction counselor. Schwab on appeal contends the trial court's error in allowing amendment of the complaint and in denying a continuance, and an improper jury-selection process require reversal of her conviction.

## II

[¶ 5] The uniform complaint and summons issued to Schwab cited N.D.C.C. § 39–08–01, but specifically charged only driving under the influence of alcohol or drugs. In an amended complaint, the prosecutor also charged driving with a blood alcohol content of .10 percent or greater. Schwab argues the trial court erred in allowing amendment of the complaint and in denying a continuance.

[¶ 6] After jury selection on the day of trial, Schwab's attorney said: "I notice the instructions that the Court has talks about .10. Well, I have the ticket here and there is no charge of .10." Schwab's attorney told the court he had not received a motion to amend the complaint and moved "not to allow the amended complaint" and also to exclude evidence regarding that charge of driving with a blood alcohol concentration of .10 or greater. The trial court concluded there was no surprise and denied Schwab's motion.

[¶ 7] After acknowledging that "I have been aware that there was a test in this case, a blood test in this case," Schwab's attorney requested a continuance:

> [I]f we're going to talk about the chemical test and anhydrous ammonia can affect the results of a chemical test, and, therefore, if the Court is going to allow this amendment, then I would ask for a continuance.

The trial court denied the request, noting "I see the arguments, but the record also would indicate that this isn't a complete surprise here today, so let's proceed."

[¶ 8] Section 39–08–01(1), N.D.C.C., provides, in part:

> A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
>
> a. That person has an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle.

b. That person is under the influence of intoxicating liquor.

Subsections (1)(a) and (1)(b) address two different conditions:

The crime created by subsection (1)(a) is driving with a blood alcohol concentration of .10, without regard to its influence or effect upon the driver. Conversely, the crime created by subsection (1)(b) is driving while under the influence of intoxicating liquor, regardless of the driver's blood alcohol concentration. Violations of subsections (1)(a) and (1)(b) of Section 39–08–01 may be pleaded alternatively.

*City of Minot v. Bjelland,* 452 N.W.2d 348, 350 (N.D.1990).

■■■ [¶ 9] The primary purpose of the complaint is to inform the defendant of the charge, so the defendant can mount a defense. *State v. Treis,* 1999 ND 136, ¶ 17, 597 N.W.2d 664. Rule 3(b), N.D.R.Crim.P., provides: "The magistrate may permit a complaint to be amended at any time before a finding or verdict if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." "This language implies that the ... complaint may be amended only with permission of the court." *State v. Klose,* 334 N.W.2d 647, 649 (N.D.1983). "The Explanatory Note to Rule 3, N.D.R.Crim.P., recognizes that 'complaints are often hastily drawn,' and 'often contain inadequacies in construction.' This is particularly true of uniform traffic complaints, which are generally not drawn by an attorney or reviewed by a magistrate before the arrest." *Bjelland,* 452 N.W.2d at 351. Under N.D.R.Crim.P. 3(b), allowing amendment of a complaint is within the district court's discretion. *Treis,* at ¶ 18. "To violate Rule 3(b), NDRCrimP, an amendment to a complaint not only must charge an additional or different offense but also must prejudice the

defendant's substantial rights." *State v. Schuh,* 496 N.W.2d 41, 46 (N.D.1993). Absent an abuse of discretion, a trial court's decision on a motion for continuance will not be set aside on appeal. *State v. Entzi,* 2000 ND 148, ¶ 22, 615 N.W.2d 145.

■■ [¶ 10] On July 2, 2002, Schwab filed a demand for discovery and inspection of, among other things, "results of all chemical and field tests administered to Defendant." On September 30, 2002, Schwab received an amended complaint, signed by the prosecutor, charging Schwab with "DRIVING WHILE UNDER THE INFLUENCE OF ALCOHOL AND/OR WITH A B.A.C. OF .10 OR GREATER." On October 1, 2002, Schwab filed requested jury instructions addressing both driving with a blood alcohol concentration of .10 or greater and driving while under the influence of intoxicating liquor. On October 1, 2002, the prosecutor filed a one-page trial brief stating, in part:

The State alleges that on or about the 18th day of May, 2002, at about 10:33 p.m. on Highway 25 about 3 miles west of Center, in Oliver County, North Dakota, the Defendant, Anna Marie Schwab, was driving her car and collided with farming equipment being hauled by a tractor driven by Darrell Schulte. Anna was under the influence of alcohol at the time, and had a B.A.C. of .15 at the time she was tested within two hours of driving.

The prosecutor filed the amended complaint, with the district judge's approval, on October 3, 2002. Schwab called a forensic scientist to testify at the trial about the effect of anhydrous ammonia on the metabolism of blood alcohol.

[¶ 11] It is clear Schwab anticipated her blood alcohol concentration would be an issue and she prepared for a trial on both driving with a blood alcohol level in

excess of .10 and for driving under the influence of intoxicating liquor. Schwab has not demonstrated any way in which the amendment or the denial of a continuance could "prejudice the defendant's substantial rights," *Schuh*, 496 N.W.2d at 46, or how she would have defended differently if a motion to amend had been made before trial or if a continuance had been granted. We conclude the trial court did not abuse its discretion in allowing the complaint to be amended or in denying Schwab's request for a continuance.

### III

[¶ 12] Schwab contends an improper jury selection process requires reversal of her conviction. "We review the trial court's jury selection procedure using an abuse of discretion standard of review." *State v. Barth*, 2001 ND 201, ¶ 8, 637 N.W.2d 369.

[¶ 13] The trial court excused and replaced two members of the panel of prospective jurors. The court excused a third panel member and said, "we'll fill that chair again." The clerk responded, "[w]e're out." The court thereafter excused two more panel members. Schwab's attorney then moved "to strike for cause all those people who know Darrell Schulte." The trial court granted Schwab's request and excused seven potential jurors who had indicated they know Darrell Schulte. The court then informed counsel:

> We're going to have to take about 15 minute break now, and we're going to have to summon some more jurors. I asked the clerk to do that earlier. I don't know what kind of progress she made.

When four additional jurors came in, Schwab's attorney asked the clerk about her selection process. The clerk explained:

> I basically went down my jury wheel list to see who is up next and if they were available, or if I knew they were working, just anybody that we could kind of think of that was not a working person, and I just gave them a call to see if they could come in on the spot.

She further explained that the prosecutor's secretary helped her bring in additional jurors. Schwab's attorney then asked for a mistrial, after which the clerk further explained that she did not call people who were related "[t]o the driver of the farming equipment, or to [the prosecutor], or that worked with him previously" whom she "knew would be excluded." The clerk explained the prosecutor's secretary did not participate in determining who would be called, but "I took a name off my jury wheel, and then she was with the phone book, and I asked her to give me the phone number." The trial court denied Schwab's motion for a mistrial:

> THE COURT: The record should further reflect that when it became evident that we were going to be unable to select a jury from the panel that we had, I instructed the clerk to call at least four—or at least three additional jurors, and that's when she left the courtroom and came out and went through this procedure that she's now described.
>
> So the record is made, and I'll deny the motion for a mistrial. I think the fact that they are from the panel and that she was doing what she could to get people here that could be available for voir dire and so that we could not have to delay the trial, those were not inappropriate considerations. I don't find that the screening amounts to anything more than trying to make sure that we've got enough people to pick a jury today.

[¶ 14] In contending her conviction should be reversed for failure to properly

select the jurors, Schwab asserts: "The trial court, in not following the Jury Selection Plan in the jury selection process, discriminated against men, rural jurors and working folk, and predetermined challenges for cause, all without notice to the Appellant nor seeking Appellant's input." Schwab further argues:

> Section 27–09.1–02 NDCC prohibits discrimination on the basis of sex or economic status. In this case the clerk and the secretary called only women who they knew would be home and available, thereby eliminating the chance that any men would be selected for jury service and discriminated against people who were working (economic status) because the clerk acknowledged that if she knew they were working, she would not call them. . . .

> The result was that four women were selected for the jury and although four [women] jurors is [sic] not statistically impossible in a random selection, it appears that there was a sexual bias in this determination because the court can take judicial notice of the fact that as it is more likely the man, master of the household and provider for the family, who is more likely to be working than the woman, so there was sexual discrimination in this particular selection.

[¶ 15] "Persons accused of crimes have a right to trial by an impartial jury." *State v. Entzi*, 2000 ND 148, ¶ 14, 615 N.W.2d 145. Section 27–09.1–01, N.D.C.C., "declares that it is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court." Section 27–09.1–02, N.D.C.C., provides "[a] citizen may not be excluded from jury service in this state on account of race, color, religion, sex, national origin, physical disability, or economic status."

## A.

[¶ 16] "We review a trial court's decision on whether to excuse a juror for cause under an abuse of discretion standard." *State v. Smaage*, 547 N.W.2d 916, 919 (N.D.1996). Section 27–09.1–08, N.D.C.C., specifies a number of factors disqualifying people from jury service, none of which have been alleged to be applicable to any of the persons struck in this case. Section 29–17–33, N.D.C.C., provides a challenge for cause to a particular juror may be general or particular. Section 29–17–35, N.D.C.C., provides that particular causes of challenge are an implied bias, or an actual bias, which is defined as "[t]he existence of a state of mind on the part of the juror, with reference to the case or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially." "[T]here is no evidence in the record that the jurors [Schwab] challenged for actual bias had an 'actual predisposition against [her]'." *Smaage*, at 919.

[¶ 17] Section 29–17–36, N.D.C.C., provides:

> A challenge for implied bias of a juror may be taken for all or any of the following causes, and for no other:

> 1. Consanguinity or relationship to the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted, or to the defendant.

> 2. The relationship of guardian and ward, attorney and client, master and servant, landlord and tenant, or debtor and creditor, or membership in the family of the defendant, or of the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted, or employment by either.

3. Being a party adverse to the defendant in a civil action, or having complained against or been accused by him in a criminal prosecution.

4. Having served on the grand jury which found the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the action.

5. Having served on a trial jury which has tried another person for the offense charged.

6. Having been one of a jury formerly sworn to try the same charge, and whose verdict was set aside, or which was discharged without a verdict, after the cause was submitted to it.

7. Having served as a juror in a civil action brought against the defendant for the act charged as an offense.

8. Repealed by S.L.1975, ch. 106, § 673.

9. Having served as a member of the jury panel within two years.

Section 29–17–36, N.D.C.C., does not specify a potential juror's acquaintance with a possible witness as a cause for an implied bias challenge. *See also People v. Levine*, 99 Ill.App.3d 141, 55 Ill.Dec. 240, 426 N.E.2d 215, 233 (1981) (stating "mere fact that a prospective juror may be acquainted with prospective witnesses … in the case is in and of itself not sufficient grounds to challenge for cause"); *Fox v. State*, 717 N.E.2d 957, 962 (Ind.Ct.App.1999) (stating a juror who knows a witness, but can "render a fair and impartial verdict," need not be dismissed for cause); *State v. Owens*, 620 S.W.2d 448, 450 (Mo.Ct.App.1981) (stating "prolonged friendship by a venireman with a witness for a party, of itself, does not sustain a contention that the refusal of the challenge for cause by the trial court was an abuse of discretion—absent a clearly drawn prejudice"); 47 Am.Jur.2d

*Jury* § 309 (1995) (stating a prospective juror is not disqualified by acquaintance with a witness). Furthermore, excusing potential jurors because of acquaintance with a possible witness would oftentimes make seating a jury difficult. As Justice Meschke observed, "in our state … most jurors know something about every other person in the county, their families, or their businesses." *State v. Brooks*, 520 N.W.2d 796, 802 (N.D.1994) (Meschke, J., concurring). While there was no basis for the trial court to grant Schwab's motion "to strike for cause all those people who know Darrell Schulte," the record reflects no objection to the motion. The State asserts it had no opportunity to object before the motion was granted but there was no objection by the State after the motion was granted.

### B.

[¶ 18] "[A] criminal defendant has a right to a jury trial with an impartial jury selected from a representative cross-section of the community." *State v. Robles*, 535 N.W.2d 729, 731 (N.D.1995). In a fair-cross-section challenge, a defendant must show the group alleged to be excluded is a distinctive group in the community, the representation of the group is not fair and reasonable in relation to the number of such persons in the community, and the group was systematically excluded in the jury selection process. *Id.* at 732–33. To prove systematic exclusion, a defendant must show the exclusion is inherent in the jury selection process used. *Id.* at 733. "A mere observation that there are no persons of the allegedly excluded class on a jury venire that was drawn from a population containing members of that class is not sufficient to demonstrate a systematic exclusion." *Id.* at 733. Bare assertions, standing alone, are insufficient to show an underrepresentation of a distinct group.

*State v. Fredericks,* 507 N.W.2d 61, 65 (N.D.1993). "To establish there was a substantial failure to comply with the statutory process requiring reversal, the complaining party must provide a factual basis showing the jury panel selection process was prejudicial, actually excluded, systematically excluded, or statistically excluded a fair cross section of the population." *State v. Palmer,* 2002 ND 5, ¶ 6, 638 N.W.2d 18. A party's "failure to provide any factual basis showing prejudice or systematic exclusion does not develop the record sufficiently to establish 'a substantial failure to comply with [Chapter 27–09.1].' *See* N.D.C.C. § 27–09.1–12(2)." *State v. Torgerson,* 2000 ND 105, ¶ 16, 611 N.W.2d 182.

[¶ 19] We conclude Schwab's bare assertions of systematic exclusion of distinct groups are insufficient to show underrepresentation of any distinct groups and systematic exclusion of potential jurors.

[¶ 20] The trial court's decision to grant Schwab's improper motion created an unanticipated shortage of petit jurors. Rules have been adopted concerning selection of jurors.

[¶ 21] N.D. Sup.Ct. Admin. Order 9 provides, in part:

1. All courts conducting jury trials shall use jurors selected only pursuant to the Uniform Jury Selection and Service Act (N.D.C.C. ch. 27–09.1) and this Administrative Rule.

2. All courts conducting jury trials shall obtain jury panels in the manner prescribed by the jury selection plan filed with the Clerk of the North Dakota Supreme Court.

The jury selection plan filed with the clerk of this Court provides, in part:

All disqualifications and excuses, temporary or permanent, must be granted by the court. The judge of the court may delegate these duties or issue a policy covering normal circumstances, by attaching an order to that effect to this plan. The clerk will note the disqualifications and excuses on the master jury list so that the status of prospective jurors is current at all times.

. . . .

The judge of the court may delegate routine decisions relating to qualifications and excuses to the clerk of court, court administrator, or other qualified person. The extent of the delegation and guidelines to be followed shall be in writing and attached to the selection plan.

By order of April 17, 2002, the presiding judge of the South Central Judicial District "delegate[d] routine decisions relating to qualifications and temporary excuses for jurors to Kim Wilkens, Clerk of District Court, Oliver County, North Dakota."

[¶ 22] Legislation has been enacted to deal with a shortage of jurors.

[¶ 23] Section 27–09.1–09(2), N.D.C.C., provides:

If there is an unanticipated shortage of available petit jurors, the court may require the sheriff to summon a sufficient number of petit jurors selected at random by the clerk in a manner prescribed by the court.

*See also* N.D.C.C. § 29–17–13, which provides, in part:

If a sufficient number of jurors cannot be obtained from the box to form a trial jury, the court, as often as is necessary, may order the sheriff to summon from the body of the county as many persons qualified to serve as jurors as the court deems sufficient to form a jury.

[¶ 24] Because the prescribed procedures do not specifically govern the shortage of jurors at the time of trial, when the

shortage developed, the trial court should have prescribed a selection procedure for the clerk of court to follow in summoning additional jurors. However, we agree with the trial court's determinations that the additional jurors were "from the panel," the clerk "was doing what she could to get people here that could be available for voir dire" without delaying the trial, and that the clerk's screening process was nothing more "than trying to make sure that we've got enough people to pick a jury today." Schwab has shown no prejudice from the process employed by the trial court and the clerk of court to remedy the shortage of jurors caused by granting Schwab's motion.

[¶ 25]   The judgment is affirmed.

[¶ 26] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.